## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JAY FENELLO, on behalf of himself and others similarly situated, | : <br> : CIVIL ACTION FILE NO. <br> : |
| Plaintiff, | : <br> : |
| v. | : **COMPLAINT – CLASS ACTION** <br> : <br> : |
| FRINGE BENEFIT GROUP, INC. D/B/A THE AMERICAN WORKER, | : **JURY TRIAL DEMANDED** <br> : <br> : |
| Defendant. | : <br> : |

### Preliminary Statement

1. Plaintiff Jay Fenello ("Plaintiff" or "Mr. Fenello") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Mr. Fenello alleges that Fringe Benefit Group, Inc. d/b/a The American Worker ("Defendant" or "American Worker") automated telemarketing

calls to Mr. Fenello and other putative class members without their prior express written consent.

3. Mr. Fenello and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Fenello brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of American Worker.

4. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Jay Fenello resides in this District.

6. Defendant Fringe Benefit Group, Inc. d/b/a The American Worker is a Texas corporation with its principal place of business in Austin, TX. Fringe Benefit Group, Inc. d/b/a The American Worker is registered with the State of Georgia and has a registered agent of Mary B. Galardi, 1418 Dresden Dr., Suite 240, Atlanta, GA 30319. American Worker makes automated telemarketing calls into this District, as it did with the Plaintiff.

## Jurisdiction & Venue

7. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member from a different state.

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. The Court has personal jurisdiction over American Worker because of their registration with the State of Georgia. In addition, American Worker made telemarketing calls into Georgia, as it did with the Plaintiff.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made into this District and because the Defendant resides in this District.

**TCPA Background**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*

5

(July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

17. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

18. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

19. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-

riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

20. A technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

**Factual Allegations**

Call to Mr. Fenello

21. Plaintiff Fenello is a "person" as defined by 47 U.S.C. § 153(39).

22. Mr. Fenello's telephone number, (770) 516-XXXX, is registered to a cellular telephone service.

23. In early March of 2019, the Plaintiff began receiving pre-recorded calls promoting health insurance from the Defendant.

24. When Mr. Fenello answered the calls, there was a distinctive click and a pause.

25. This click and pause is a telltale sign of a predictive dialer.

26. The click and pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

27. As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

28. A predictive dialer is an ATDS as that term is defined by the TCPA.

29. Because of the predictive dialer, Mr. Fenello was greeted with dead air.

30. The pre-recorded message would the play.

31. In fact, the use of a pre-recorded message is itself a sign of an ATDS, as it would be illogical to hand-dial a call only to play a pre-recorded message.

32. The pre-recorded messages offered to "press 2" to connect to an agent, or to "press 9" to be placed on a Do Not Call list.

33. The Plaintiff repeatedly "pressed 9", but the calls continued.

34. On March 21, 2019, the Plaintiff received another pre-recorded call from the Defendant.

35. This time, to ascertain the identity of the sender of the calls from the last few weeks, who was not identified in the pre-recorded message, the Plaintiff "pressed 2".

36. The Plaintiff spoke with a telemarketing representative who was named "Corey".

37. "Corey" promoted the Defendant's insurance products.

38. The Plaintiff then spoke to a supervisor named "Billy Vargas," who terminated the call.

39. Plaintiff is not a customer of any the Defendant and has not consented to receive telemarketing calls prior to the receipt of these calls.

40. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## Class Action Allegations

41.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

42.     The Class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States to whom: (a) American Worker and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) that promoted or could have promoted American Worker's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

43.     Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

44.     The Class as defined above is identifiable through phone records and phone number databases.

45.     The potential Class's members number at least in the thousands. Individual joinder of these persons is impracticable.

46.     Plaintiff is a member of the Class.

47. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

   a. Whether Defendant violated the TCPA by using automated calls to contact putative class members cellular telephones;

   b. Whether Defendant placed calls without obtaining the recipients' prior express invitation or permission for the call;

   c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

48. Plaintiff's claims are typical of the claims of class members.

49. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

50. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

51. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

52. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### Legal Claims

### Count One:
### Violation of the TCPA's Automated Call provisions

53. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

54. The Defendant violated the TCPA by (a) initiating automated telephone solicitations to cellular telephone numbers, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

55. The Defendant's violations were willful and/or knowing.

56. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular

telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

### Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A.   Injunctive relief prohibiting Defendant from calling telephone numbers using an artificial or an automated voice;

C.   Because of Defendant's violations of the TCPA, Plaintiff Fenello seeks for himself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3);

57.   Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future;

D.    An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

E.    Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

## CERTIFICATION OF COUNSEL

I hereby certify in accordance with U.S.D.C. N.D. Ga. Local Rule 7.1D that the foregoing CLASS ACTION COMPLAINT has been prepared using Times New Roman, 14-point font, as required in U.S.D.C. N.D. Ga. Local Rule 5.1C.

Dated: May 1, 2019                    JAY FENELLO, on behalf of himself
                                       and others similarly situated,

                                       By:

                                       **THE KOVAL FIRM, LLC**

                                       */s/ Steven H. Koval*
                                       Steven H. Koval
                                       Georgia Bar No. 428905
                                       3575 Piedmont Road
                                       Building 15, Suite 120
                                       Atlanta, GA  30305
                                       Telephone:  (404) 513-6651
                                       Facsimile: (404) 549-4654
                                       shkoval@aol.com